-PS-O-

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JONATHON WHEELER-WHICHARD,

Plaintiff,

-v-

W. JOHN MARK DOE, WESLEY CANFIELD,
WENDELYN RUIZ, EVANS,

Defendants.
_____



DECISION and ORDER
10-CV-0358S

## INTRODUCTION

Plaintiff, Jonathon Wheeler-Whichard, an inmate of the Attica Correctional Facility, has filed this *pro se* action seeking relief under 42 U.S.C. § 1983 (Docket No. 1) and has both requested permission to proceed *in forma pauperis* and filed a signed Authorization (Docket No. 2). Plaintiff has also submitted a "Motion for Permission to File a Supplemental Complaint" (Docket No. 4), a "Memorandum of Law in Support of TRO [and] Preliminary Injunction" (Docket No. 5), and a "Seal Application" (Docket No. 6). Plaintiff claims that the defendants, W. John Mark Doe, Nurse, Southport, Wesley Canfield, M.D., Southport, Wendelyn Ruiz, P.A., Attica, and Evans, M.D., Attica, denied him adequate medical care at either the Southport or Attica Correctional Facilities between March 2009 and the filing of the complaint. (Docket No. 1, Complaint). For the reasons discussed below, plaintiff's request to proceed as a poor person is granted, his motion for permission to file a supplemental complaint is denied without prejudice to re-filing (a copy of the proposed supplemental complaint must be attached to the re-filed motion), his motion for a temporary restraining order and preliminary injunction is denied, and his application to seal this action and proceed under a

pseudonym is denied. The Clerk of the Court will be directed to serve the summons and complaint upon defendants.

## DISCUSSION

Because plaintiff has met the statutory requirements of 28 U.S.C. § 1915(a), he is granted permission to proceed *in forma pauperis*. Section 1915(e)(2)(B) of 28 U.S.C. provides that the Court shall dismiss a case in which *in forma pauperis* status has been granted if, at any time, the Court determines that the action (i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. Section 1915 "provide[s] an efficient means by which a court can screen for and dismiss legally insufficient claims." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (citing *Shakur v. Selsky*, 391 F.3d 106, 112 (2d Cir. 2004)).

In evaluating the complaint, the Court must accept as true all of the factual allegations and must draw all inferences in plaintiff's favor. *See Larkin v. Savage*, 318 F.3d 138, 139 (2d Cir. 2003) (per curiam); *King v. Simpson*, 189 F.3d 284, 287 (2d Cir. 1999). Moreover, "a court is obliged to construe [*pro se*] pleadings liberally, particularly when they allege civil rights violations." *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004); *and see Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998). "The policy of liberally construing pro se submissions is driven by the understanding that '[i]mplicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training.'" *Abbas*, 480 F.3d at 639 (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir.1983)).

Nevertheless, even pleadings submitted *pro se* must meet the notice requirements of Rule 8 of the Federal Rules of Civil Procedure. *Wynder v. McMahon*, 360 F.3d 73 (2d Cir. 2004). "Specific facts

2

are not necessary," and the plaintiff "need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " *Erickson v. Padus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal quotation marks and citation omitted). "A document filed *pro se* is to be liberally construed...and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erikson*, 551 U.S. at 94 (internal quotation marks and citations omitted). Generally, the Court will afford a *pro se* plaintiff an opportunity to amend or to be heard prior to dismissal "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." *Abbas*, 480 F.3d at 639 (2d Cir. 2007) (quoting *Gomez v. USAA Federal Savings Bank*, 171 F.3d 794, 796 (2d Cir. 1999) (*per curiam*)).

### A. Plaintiff's Allegations[1]

The complaint alleges that beginning in March 2009, while incarcerated at the Southport Correctional Facility, plaintiff began experiencing severe pain in his left flank area. He was told the pain was from an old scar and was prescribed over-the-counter ("OTC") pain medication. Upon his return to Southport in May 2009 following a court appearance downstate, he was still experiencing pain and was seen by defendant John "Mark" Doe, a nurse on C-Block, whom advised plaintiff that the pain was from an old scar and prescribed him OTC pain medication. Plaintiff continued to experience pain and was repeatedly told by defendant Mark Doe and other nurses that it was from the scar and to continue to take OTC pain medication and to massage the area. Plaintiff continued to experience pain and repeatedly requested to see a doctor. A urine test he underwent in August 2009 was "normal." After another sick call on August 13, 2009, plaintiff was seen by a physician's

---

[1] This summary of plaintiff's allegations is derived from the complaint and exhibits attached thereto.

assistant whom he believed was seeing him for his foot pain, for which he also routinely complained about, but the physician's assistant was seeing plaintiff for his flank pain. Plaintiff also complained to another Nurse at that sick call about his flank pain, Diane Weed, but was told that since he was not on her housing block she could not do anything for him. Weed also confirmed that plalintiff's urine test was normal.

Plaintiff continued to complain to Mark Doe about his flank pain, which he was convinced had something to do with his liver, but he received no additional treatment for the pain. On September 4, 2009, plaintiff went to another sick call for the pain and for the first time saw a doctor, defendant Wesley Canfield, for his flank pain. Plaintiff told Canfield about his flank pain and asked Canfiled is there was anything wrong with his liver and kidneys, and if he had hepatitis or cancer. Canfield told plaintiff that he had reviewed his lab results and that there was nothing wrong with his liver or kidneys and that he did not have cancer. Canfield also told plaintiff that his flank pain was due to a lack of exercise and prescribed a muscle relaxer.

Plaintiff continued to ask for sick calls and continued to complain to Mark Doe about his flank pain and asked Mark Doe f he had "H. Pylori." He was told that flank pain was not related to H. Pylori and that he had to give the muscle relaxers a chance to work. Plaintiff states he listened to all sorts of television or radio commercials about medical problems and mis-diagnosed symptoms, and after the actor Patrick Swayze died from pancreatic cancer he asked Mark Doe for a pancreatic cancer test. Mark Doe advised plaintiff that "if he had what Patrick Swayze had, he would've known" and did not order the test. (Docket No. 1, Complaint, at 28-30.) Plaintiff also asked for other tests because the muscle relaxers were not working. Plaintiff was transferred to Attica on September 25, 2009.

Plaintiff's complaints of left flank plan and requests for treatment continued unabated at Attica. He repeatedly put in requests for sick calls and was seen repeatedly by a nurse at Attica, Norm, who was very helpful and made him appointments to see a Physician's Assistant, defendant Wendelyn Ruiz, and a Doctor, defendant Evans. Ruiz advised him that she agreed with the diagnosis of Mark Doe and Dr. Canfieldt and she ordered physical therapy, but despite plaintiff's pleas Ruiz did not order an MRI. Ruiz also ordered a psychological consult because plaintiff had disagreed with her belief that physical therapy would help and because he believed he had numerous diseases that were causing the pain. (Complaint, ¶¶ at 49-57.)

Plaintiff first saw Dr. Evans in January 2010, who told him that Mark Doe and Canfield were wrong about his flank pain because his complaints were "not related to outer body complaints." Evans ordered a stronger muscle relaxer--Robaxin--, x-rays and blood tests. In February 2010, plaintiff was advised by a Physician's Assistant that the results of the x-rays were negative. Plaintiff again demanded an MRI but one was not ordered. In March 2010, plaintiff alleges that Evans told him that the blood tests illustrated that his flank pain was not from an old scar or muscle problems but that the kidneys were producing more protein than necessary. (Complaint, ¶ 70, 87.) Evans also ordered plaintiff to be seen by a rheumatologist for his arm and wrist pain and that his foot pain may be related to some genetic condition. (Id., ¶¶ 74-77.)

Plaintiff continued to complain about his pain and demand an MRI because he did not trust the medical staff. He was seen by a rheumatologist via video conference and was advised that the doctor would order some tests. Plaintiff alleges that he is continually in pain and that he is "cynical" about the medical staff and is thus seeking relief from the court. (Id., ¶¶ 90-91.)

The Court notes that while much of the complaint appears to be little more than a disagreement over the medical treatment plaintiff has received for his continued and multiple complaints of flank, foot and arm pain, *see Chance v. Armstrong*, 143 F.3d 698, 702-03 (2d Cir. 1998) (an inmate's "mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation."); *Hyde v. McGinnis*, 429 F.2d 864, 867 (2d Cir. 1970) (*quoting Coppinger v. Townsend*, 398 F.2d 392, 394 (10th Cir. 1968)); *accord Ross v. Kelly*, 784 F. Supp. 35, 43-44 (W.D.N.Y.), *aff'd,* 970 F.2d 896 (2d Cir. 1992), the Court concludes, at this preliminary stage of the litigation, that it must allow the complaint to proceed to service upon defendants,[2] but, as discussed below, plaintiff's motion for a TRO and preliminary injunction is denied.

### B. Motion for a Temporary Restraining Order and Preliminary Injunction

As noted, plaintiff has moved for a temporary restraining order and preliminary injunction. *See* Fed. R. Civ. P. 65, and Loc.R.Civ.P. 65. (Docket No. 1, Affirmation and Memorandum of Law in Support of TRO, attached to complaint; Docket No. 5. Memorandum of Law in Support of TRO and Preliminary Injunction.)[3]

---

[2]*See, e.g., Boykin v. KeyCorp.*, 521 F.3d 202, 216 (2d Cir.2008) (the "dismissal of a pro se claim as insufficiently pleaded is appropriate only in the most unsustainable of cases."); *McEachin v. McGuiniss*, 357 F.3d 197, 200 (2d Cir. 2004) ("We have frequently reiterated that '[s]ua *sponte* dismissals of *pro se* prisoner petitions which contain non-frivolous claims without requiring service upon respondents or granting leave to amend is disfavored by this Court.' ") (quoting *Moorish Sci. Temple of Am. Inc. v. Smith*, 693 F.2d 987, 990 (2d Cir. 1982); *Benitez v. Wolff*, 907 F.2d 1293, 1295 (2d Cir. 1990) (*per curiam*) ("*Sua sponte* dismissal of a *pro se* complaint prior to service of process is a draconian device, which is warranted only when the complaint lacks an arguable basis in law or fact. Where a colorable claim is made out, dismissal is improper prior to service of process and the defendants' answer.") (citations and internal quotations omitted)).

[3]The Clerk of the Court did not upon receipt of the complaint docket the Affirmation and Memorandum of Law in Support of TRO and Preliminary Injunction, and the Motion to Seal ("Seal Application") separately because it appeared that they were simply part of the voluminous exhibits attached to the complaint. Upon

> A temporary restraining order may be granted without written or oral notice to the adverse party ... only if (1) it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party ... can be heard in opposition, and (2) the applicant's attorney certified to the court in writing the efforts, if any, which have been made to give the notice and the reasons supporting the claim that notice should not be required.

Fed R. Civ. P. 65(b). Plaintiff's motions do not comply with either prong of this Rule.

Plaintiff does not certify in any way that he made any effort to notify the defendants of his motion for injunctive relief, nor that such notice should not be required. Even if the Court were to ignore such failure, plaintiff's motion and supporting papers neither (1) demonstrate a likelihood of success on the merits and irreparable injury,[4] nor (2) raise serious questions going to the merits, with the balance of hardship tipping in the plaintiff's favor. *See, e.g., Abdul Wali v. Coughlin*, 754 F.2d 1015, 1025 (2d Cir. 1985), *Paulsen v. County of Nassau*, 925 F. 2d. 65, 68 (2d Cir. 1991).

Plaintiff claims that he is entitled to a temporary restraining order and preliminary injunction because: (1) his medical condition prevents him from moving freely, and also, the failures of medical staff to provide adequate care prevents him from trusting them, and (2) he is "likely to succeed on

---

inquiry from plaintiff, he was advised that the Affirmation and Memorandum of Law, and Sealing Application, were received with and attached to the complaint, would be construed as a Motion for a TRO and Preliminary Injunction, and Motion to Seal, and dealt with accordingly. Plaintiff then filed a separate Memorandum of Law in Support of TRO and Preliminary Injunction (Docket No. 5.), and Sealing Application (Docket No. 6), all raising the same grounds raised in the ones attached to the complaint. The Court will consider the motions attached to the complaint and the separately filed motions jointly herein.

The Court's Local Rules, Loc.R.Civ.P. 65(a)(1) (*Ex parte* TRO) and (b)(1) (Preliminary Injunction) require that separate motions for such relief be filed with the court and include a copy of the complaint, a motion for a TRO or Preliminary Injunction, a memorandum of law and a proposed order.

[4]Because an alleged violation of a constitutional right "triggers a finding of irreparable harm," plaintiff necessarily satisfies the requirement that a party applying for a preliminary injunction show irreparable harm. *Jolly v. Coughlin*, 76 F.3d 468, 482 (2d Cir. 1996); *see also Statharos v. New York City Taxi and Limousine Comm'n*, 198 F.3d 317, 322 (2d Cir. 1999) ("Because plaintiffs allege deprivation of a constitutional right, no separate showing of irreparable harm is necessary.") (citation omitted). As explained below, however, plaintiff's motion must nonetheless be denied.

the merits of his claim because the [Eighth] amend[ment] issues that [are] raised, which will be fully set forth more fully when replying, is a[n] axiomatic violation to the point where I have to rely on the courts for help even in taking a [blood] test to the point where if positive, it will be more clearly to see the compounded facts of intentional degeneration." (Docket No. 5, at 2). At this time, the Court finds that plaintiff has not shown either a likelihood of success on the merits nor does he raise a serious question going to the merits, with the balance of hardships tipping in his favor.

As noted, the complaint, while well pled and organized, appears, at this time, to be based primarily on plaintiff's disagreement with the scope and type of medical care and treatment he has received for his constant complaints of pain. He has been repeatedly seen by medical personnel over the last year and one-half, numerous tests have been performed and he has received treatment for his pain, *albeit* treatment he complains is not sufficient or alleviating his symptoms. *See Chance*, 143 F.3d at 703 ("[M]ere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation."); *see also Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir.2003) ("Because the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law, not every lapse in prison medical care will rise to the level of a constitutional violation."). While plaintiff alleges that the defendants were at times rude and unhelpful, he simply has not alleged sufficiently nor established on this motion for preliminary injunctive relief that defendants have been deliberately indifferent to a serious medical need or knew of and disregarded an excessive risk to his health. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see, e.g., Johnson v. Wright*, 412 F.3d 398, 403 (2d Cir. 2005) (To establish deliberate indifference to his serious medical needs, a inmate must estalbish (1) a medical need

8

constituting "a condition of urgency" that might result in "death, degeneration, or extreme pain," and (2) defendant's knowledge and disregard of "an excessive risk to [the inmate's] health or safety." (internal quotation marks omitted).

Moreover, since plaintiff's request for a TRO and preliminary injunction is of a mandatory nature–that is, "an injunction that will alter rather than maintain status quo," he is required to make a "clear or substantial likelihood of success on the merits." *Doninger v. Niehoff*, 527 F.3d 41, 47 (2d Cir. 2008) (citing *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir.2004). This, plaintiff has not done. Accordingly, plaintiff's motion for a temporary restraining order and preliminary injunction is denied.

### C. Motion to File a Supplemental Complaint

Plaintiff's motion to file a supplemental complaint, pursuant to Fed.R.Civ.P. 15(d), must be denied without prejudice to re-filing because plaintiff failed to attach a copy of the proposed supplemental complaint to the motion. (Docket No. 4.) Without a copy of the proposed supplemental complaint, the Court cannot make a determination under 28 U.S.C. § 1915(e)(2)(B) and 1915A, and whether the supplemental complaint states a claim for relief that would survive a motion to dismiss under Fed.R.Civ.P. 12(b)(6). *See Ford v. Conway*, No. 03-CV-927S, 2005 WL 263900, at *1 (W.D.N.Y. February 1, 2005) (plaintiff's motion to amend the Complaint denied on the basis that the proposed amended complaint could not withstand a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), and therefore would be futile).

Accordingly, plaintiff's motion to file a supplemental complaint is denied without prejudice to re-filing. The motion must attach a copy of the proposed supplemental complaint.

**D. Sealing Application**

Plaintiff has also moved, pursuant to Local Rule of Civil Procedure 5.4, to seal the instant case by proceeding under the pseudonym "John Doe." He argues that the Court must order that this action proceed under a pseudonym because the case involves personal medical records. (Docket No. 6 at 1). The well-established presumption of accessability to court documents is reflected in the Local Rule upon which plaintiff bases his motion to seal: "there is a presumption that Court documents are accessible to the public and that a substantial showing is necessary to restrict access." Loc.R.Civ.P. 5.4; *see also Orion Pictures v. Video Software Dealers Ass'n.*, 21 F.3d 24, 26 (2d Cir. 1994) ("[C]ourts have recognized a strong presumption of public access to court records. This preference for public access is rooted in the public's first amendment right to know about the administration of justice.") (citing *Nixon v. Warner Communications, Inc.*, 435 U.S. 589 (1978)); *U.S. v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995); *Stephanski v. Goord*, 02-CV-562F, 2005 WL 711628, at *1-2 (W.D.N.Y. 2005).

While this presumption of access can be overcome by a number of countervailing interests, such as preserving a defendant's right to a fair trial or a third party's privacy interests, *see e.g. Stephanski*, No. 02-CV-562F, 2005 WL 711628, at *1-2, our Court of Appeals has emphasized that a district court "must carefully and skeptically review sealing requests to insure that there really is an extraordinary circumstance or compelling need" to seal court records. *Orion Pictures*, 21 F.3d at 27. The courts are similarly cautious about permitting plaintiffs to proceed under a pseudonym. A plaintiff may be permitted to proceed using a fictitious name "where there are significant privacy interests or threats of physical harm implicated by disclosure," *National Commodity and Barter Ass'n v. Gibbs*, 886 F.2d 1240, 1245 (10th Cir. 1989), but the concealment of a plaintiff's real name

is not explicitly sanctioned by the federal rules and is contrary to Fed. R. Civ. P. 10(a), which requires the names of all parties to appear in a complaint and Fed. R. Civ. P. 17(a), which requires that an action be prosecuted in the name of the real party in interest. *See Also EW v. N.Y. Blood Ctr.*, 213 F.R.D. 108, 110 (E.D.N.Y. 2003) ("[T]he use of pseudonyms to conceal a plaintiff's real name has no explicit sanction in the federal rules").

While the federal courts have permitted exceptions to the requirement that a plaintiff's identity be disclosed, so as to protect significant privacy interests or to protect a party from physical harm, it is still the "exceptional case" in which a plaintiff will be permitted to proceed under a pseudonym. *Free Speech v. Reno*, 98 Civ. 912, 1999 WL 47310, at *3 (S.D.N.Y. 1999) (citing *Doe v. Frank*, 951 F.2d 320, 323 (11th Cir. 1992)). A plaintiff seeking to file suit under a pseudonym must demonstrate an interest in proceeding anonymously sufficiently strong to outweigh the policy strongly favoring disclosure. *Moe v. Dinkens*, 533 F.Supp. 623, 626-27 (S.D.N.Y. 1981), *aff'd* 669 F.2d 67 (2d Cir. 1982). In exercising its discretion to determine whether a plaintiff will be allowed to proceed anonymously, the courts must weigh a number of factors, including:

> (1) whether the litigation involves matters that are highly sensitive and [of a] personal nature, (2) whether identification poses a rick of retaliatory physical or mental harm to the ... party [seeking to proceed anonymously] or even more critically, to non-innocent parties, (3) whether identification presents other harms and the likely severity of those harms, including whether the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity, (4) whether the plaintiff is particularly vulnerable to the possible harms of disclosure, particularly in light of his age, (5) whether the suit is challenging the action of the government or that of private parties, (6) whether the defendant is prejudiced by allowing the plaintiff to press his claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court, (7) whether the plaintiff's identity has thus far been kept confidential, (8) whether the public's interest in the litigation is furthered by requiring the plaintiff

> to disclose his identity, (9) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities, and (10) whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff.

*Sealed Plaintiff v. Sealed Defendant # 1*, 537 F.3d 185, 190 (2d Cir. 2008) (internal quotation marks and citations omitted).

Following review of the plaintiff's papers in support of his motion, and consideration of the relevant factors set forth above, the Court determines that plaintiff's sealing application to proceed under a pseudonym should be denied but that the medical records themselves that are attached to the complaint should be detached from the complaint and filed under seal.

Plaintiff asserts that he should be allowed to proceed under a pseudonym because his complaint deals with medical issues. (Docket No. 6, Seal Application, at 1). There is no doubt that plaintiff's complaint deals exclusively with his medical complaints of pain and his beliefs, which appear to be mostly unfounded, that he suffers from all sorts of diseases that could be life threatening. However, the fact that a case involves a plaintiff's medical condition, while arguably personal in nature, is not in-and-of itself sufficient to grant plaintiff's request to proceed under a pseudonym. Many prisoner civil rights cases brought in this Court involve medical claims and issues, and if simply raising a medical claim was the standard then sealing would become the rule not the exception in these types of cases. The Court recognizes that in certain circumstances the nature of the claims or medical issues may be highly sensitive and personal or may expose a plaintiff to harm or ridicule if disclosed, *see Powell v. Schriver*, 175 F.3d 197, 111 (2d Cir. 1999) (transsexuals have a constitutional right to maintain confidentiality), but there is nothing in the

complaint or exhibits attached thereto that indicate such a claim or medical condition is at issue in this matter.

The Court notes, however, that this Court and other district courts routinely file medical records under seal, without sealing the action or having plaintiff proceed under a pseudonym, to protect plaintiff's privacy interests in his medical records and, therefore, plaintiff's medical records only shall be sealed. *E.g., Shomo v. New York Dept. Of Correctional* Services, No. 9:04-CV-0910 (LEK/GHL), 2007 WL 2580509, at *14, n.84) (N.D.N.Y. Sept. 4, 2007); *Ray v. New York State Dept. Of Corrections*, No. 04-CV-6191L, 2005 WL 2994312, at *3 (W.D.N.Y. Nov. 8, 2005).

Accordingly, the Court finds that there is no compelling basis to grant plaintiff's request that he be permitted to proceed under a pseudonym and that this action be sealed.

## CONCLUSION

Because plaintiff has met the statutory requirements of 28 U.S.C. § 1915(a) and filed an Authorization with respect to the filing fee, his request to proceed *in forma pauperis* is hereby granted. Plaintiff's motion to file a supplemental complaint is denied without prejudice to re-filing with a copy of the proposed supplemental complaint attached to the motion. Plaintiff's motion for a temporary restraining order and preliminary injunction is denied, and his sealing application to proceed under a pseudonym is denied but the medical records attached to the complaint shall be detached from the complaint and filed under seal.

## ORDER

IT IS HEREBY ORDERED, that plaintiff's request to proceed *in forma pauperis* is granted;

FURTHER, that the Clerk of the Court is directed to file plaintiff's papers, and to cause the United States Marshal to serve copies of the Summons, Complaint, and this Order upon Wesley

Canfield, M.D., Southport Correctional Facility, Wendelyn Ruiz, Physician's Assistant, Attica Correctional Facility, and Evans, M.D., Attica Correctional Facility, without plaintiff's payment therefor, unpaid fees to be recoverable if this action terminates by monetary award in plaintiff's favor;

FURTHER, that pursuant to 42 U.S.C. § 1997e(g)(2), the defendants are directed to respond to the complaint;

FURTHER, that pursuant to *Valentin v. Dinkins*, 121 F.3d 72 (2d Cir. 1997), the New York Attorney General's Office is requested to ascertain the last name of Nurse Mark Doe, who saw and treated plaintiff at the Southport Correctional Facility, C-Block, between May and September 2009 (the Court notes that Mark Doe's signature is written on many of plaintiff's medical records that are attached to the complaint but is not legible. It appears to begin with an "L" and has the number 259 written next to it);

FURTHER, that plaintiff's motion to file a supplemental complaint is denied without prejudice to re-filing with a copy of the proposed supplemental complaint attached to the motion;

FURTHER, that plaintiff's motion for a temporary restraining order and preliminary injunction is denied; and

FURTHER, that plaintiff's sealing application and to proceed under a pseudonym is denied, but the Clerk of the Court shall detach from the complaint plaintiff's medical records, which are attached to the complaint as exhibits and file said medical records under seal.

IT IS SO ORDERED.

*/s/ Paul H. Larimer*
DAVID G. LARIMER
United States District Judge

DATED: August 27, 2010
Rochester, New York